UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

JAMES BOUTON,                      :
                                   :
     Plaintiff,                    :
                                   :
V.                                 :   CASE NO. 3:04-CV-1756 (RNC)
                                   :
MICHAEL J. ASTRUE,                 :
COMMISSIONER OF                    :
SOCIAL SECURITY,                   :
                                   :
     Defendant.                    :

RULING AND ORDER

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) seeking review of a final decision of the Commissioner of Social Security denying his application for disability benefits. For the reasons that follow, the decision is affirmed.

I. Background

Plaintiff applied for Social Security Disability income claiming that chronic pain in his lower back limited his ability to work. (Tr. at 97) He alleged disability from January 1, 1999 to June 30, 1999, the date he was last insured for disability purposes. After his application was denied, he requested a hearing, which took place before an ALJ on April 13, 2004.

At the hearing, plaintiff argued that his back condition, combined with post-traumatic stress disorder and anxiety disorder, kept him from working. (Tr. at 32) Plaintiff testified that he had not held a full-time job since 1991, when he was employed as a diesel mechanic. (Tr. at 33) He had surgery on his back in 1993.

(Tr. at 34) He experienced back pain daily, with a severity level of at least 5 out of 10, and walked with a limp. (Tr. at 34, 36, 38) He also testified that he experienced panic attacks twice a month. (Tr. at 43) He had abused alcohol in the past, but had gone through recovery programs and had not had a drink in a year. (Tr. at 47)

On July 22, 2004, the ALJ determined that plaintiff was not disabled within the meaning of the Social Security Act. Following the five step process for evaluating disability claims established by the Social Security Administration ("SSA"), the ALJ found that (1) plaintiff had not engaged in substantial gainful activity since 1991; (2) plaintiff's chronic lower back disorder was a severe impairment under Social Security regulations; (3) plaintiff's specific impairment did not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4; (4) plaintiff was unable to perform any of his past relevant work but (5) he had the residual functional capacity to perform a full range of light work prior to June 30, 1999. (Tr. at 21-22); see 20 C.F.R. § 404.1520 (2006); see also Draegert v. Barnhart, 311 F.3d 468, 472 (2d Cir. 2002).

Plaintiff's request for review of the ALJ's decision was denied by the Appeals Council on August 20, 2004, rendering the ALJ's decision final.

II. Discussion

A reviewing court may set aside the decision of an ALJ only when it is based on an erroneous legal standard or the ALJ's findings are not supported by substantial evidence in the record as a whole. See Curry v. Apfel, 209 F.3d 117, 122 (2d Cir. 2000). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Dousewicz v. Harris, 646 F.2d 771, 773 (2d Cir. 1981) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)).

A.

Plaintiff disputes the ALJ's determination that he does not meet the requirements for a disorder of the spine under 20 C.F.R. 404, Appx. 1, § 1.04.[1] He claims that his lower back disorder

---

[1] Plaintiff also argues that it "is indicative of error that the [ALJ] made no finding as to the required elements of Listing § 1.04." Pl.'s Mem. Supp. Mot. For Reversal or Remand at 11. An ALJ commits error when he "does not cite any evidence, nor does he set forth the requirements of any listed impairment to point out the shortcomings of the evidence in relation to those requirements." Kyle v. Apfel, 99 F. Supp. 2d 227, 234 (D. Conn. 2000). However, an ALJ's factual findings are adequate when they afford a "basis for meaningful judicial review of the substance of his decision." Gyurko v. Harris, 487 F. Supp. 1121, 1128 (D. Conn. 1980); see also Ferraris v. Heckler, 728 F.2d 582, 587 (1984) ("the crucial factors in any determination must be set forth with sufficient specificity to enable us to decide whether the determination is supported by substantial evidence.") In evaluating plaintiff's claims under § 1.04, the ALJ indicated which elements lacked evidentiary support in the record. (Tr. at 18) Because his findings are sufficient to afford meaningful judicial review, he did not err in failing to list each element of § 1.04(A) and § 1.04©). See Rivera v. Barnhart, No. Civ.A. 04-30131-KPN, 2005 WL 670538, at *5 (D. Mass. Mar. 14, 2005) ("the failure . . . to make specific findings as to whether a claimant's impairment meets the requirements of a listed impairment is an insufficient reason in and of itself for setting aside an administrative finding").

3

satisfies both the § 1.04(A) and § 1.04(C) listings. However, the ALJ's determination is supported by substantial evidence.

For a spinal disorder to fall within § 1.04(A), there must be "[e]vidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss . . . accompanied by sensory or reflex loss and . . .positive straight-leg raising test." 20 C.F.R. 404, Subpart P, Appx. 1 § 1.04(A) (2006). To meet § 1.04(C), there must be "[l]umbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively." 20 C.F.R. 404, Subpart P, Appx. 1 § 1.04(C) (2006). An impairment meets the requirements of one of these listings "when it satisfies all of the criteria" of a listing. 20 C.F.R. § 404.1525(c)(3) (2006); see also Sullivan v. Zebley, 493 U.S. 521, 530 (1990).

Plaintiff argues that a CT Scan performed on in January 2000 proves that his condition met both listings during his insured period. Evidence of a disability attained after a plaintiff's insured period is pertinent "in that it may disclose the severity and continuity of impairments existing before" the insured period expired. Gold v. Sec'y of Health, Educ. & Welfare, 463 F.2d 38, 41-42 (2d Cir. 1972). The court must consider such evidence "in light of the entire record" to determine if it "establishes the

4

existence of a physical impairment prior to" the insured date. Dousewicz, 646 F.2d at 774 (internal quotations omitted).

It was not error for the ALJ to find that this CT Scan did not establish disability within the insured period. The scan showed moderate central spinal stenosis and severe foraminal stenosis. (Tr. at 1226) However, medical reports prepared during the insured period, or closer to that time, show that plaintiff was not disabled. An assessment done by a physician at the Department of Veterans Affairs in March 1999 indicates that plaintiff had no physical restrictions and could work a full work day. (Tr. at 1247) A back pain assessment done in October 1999 states that plaintiff's range of motion was within normal limits. (Tr. at 393)

Furthermore, the CT scan report says that plaintiff failed to provide the examiner with any prior medical films in order to put the evaluation into context. (Tr. at 1226). Because the scan does not disclose the severity of plaintiff's impairment before his insured status expired, the ALJ properly found that it was insufficient to establish disability. See Kocaj v. Apfel, No. 97CIV5049(SHS), 1999 WL 461776, at *6 (S.D.N.Y. July 6, 1999) (refusing to credit a doctor's report that "indicates that as of 1996, plaintiff's blood pressure was elevated and that she was bleeding from her varicose veins" because "it does not shed new light on the status of her blood pressure or varicose veins prior to the expiration of her insured status.")

5

Even if the CT Scan shed light on the status of plaintiff's disorder during his insured period, the evidence presented would still be insufficient to establish a disability under § 1.04(A). Plaintiff offered no evidence of a straight-leg raising test, as required by the regulation. Because it was his burden to do so, see Draegert, 311 F.3d at 472, the ALJ properly found that plaintiff did not meet the impairment listed in § 1.04(A).

Similarly, even crediting the CT Scan, it was not error for the ALJ to conclude that plaintiff did not meet § 1.04(C). The ALJ found that there was "no evidence of spinal arachnoiditis or lumbar spinal stenosis which resulted in the inability to ambulate effectively prior to June 30, 1999." (Tr. at 18). The regulations state that the inability to ambulate effectively "means an extreme limitation of the ability to walk." 20 C.F.R. 404 Subpart P, Appx. 1 § 1.00(B)(2)(b)(1) (2006). To ambulate effectively, plaintiff "must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living." Id. at § 1.00(B)(2)(b)(2).

As evidence that he could not ambulate effectively, plaintiff points to a physical therapist's report of October 1999, which states that he walked "rather stiffly".[2] (Tr. at

---

[2]Plaintiff also testified that he walked with a limp. (Tr. at 36) Because medical reports done before the date plaintiff was last insured contradict his contention that he could not ambulate

6

394) However, there was evidence in the record that plaintiff was not extremely limited in his ability to walk. He testified that, as part of a job he performed at the VA, he pushed wheelchair-bound patients from one room to another. (Tr. at 42) And a residual functional capacity assessment prepared by a doctor states that plaintiff could stand or walk with normal breaks for about six hours. (Tr. at 486) Conflicts in medical evidence are to be resolved by the ALJ, see <u>Aponte v. Sec'y, Dep't of Health & Human Servs.</u>, 728 F.2d 588, 591 (1984). Accordingly, I conclude that the ALJ did not err in determining that plaintiff did not meet the listed impairment in § 1.04©).

## B.

Plaintiff argues that it was error for the ALJ not to mention a report indicating that he had mild cerebellar atrophy. Plaintiff referred to the report at the hearing, but did not explain how the condition contributed to his disability. Instead, when testifying about his mental condition, plaintiff focused on post-traumatic stress disorder and anxiety attacks he experienced, as well as the effect that his pain medication had on his ability to concentrate.

---

effectively, the ALJ was entitled to reject his testimony. <u>See Williams v. Bowen</u>, 859 F.2d 255, 260-61 (2d Cir. 1988).

7

An ALJ's written decision does not have to "mention every item of testimony presented." Mongeur v. Heckler, 722 F.2d 1033, 1040 (2d Cir. 1983). However, the ALJ has a duty to develop a complete medical record before making a disability determination. Pratts v. Chater, 94 F.3d 34, 37 (2d Cir. 1996). The ALJ fulfilled his duty here, where several psychological reports in the record discuss only plaintiff's post-traumatic stress disorder, anxiety attacks, and lack of concentration, (Tr. at 249, 438), and the ALJ addressed these issues in his decision. (Tr. at 19) Because plaintiff does not show how this impairment renders him unable to work, as is his burden, see Draegert, 311 F.3d at 472, it was not error for the ALJ to omit plaintiff's mild cerebellar atrophy from his decision. See Fonseca v. Chater, 953 F. Supp. 467, 471 (W.D.N.Y. 1996) (finding the Commissioner's decision was supported by substantial evidence, although it did not discuss the plaintiff's high blood pressure, because the plaintiff "did not allege, in either his disability application or hearing testimony, that he experienced any symptoms or limitations as a result of" that ailment.)

C.

Finally, plaintiff contends that the ALJ erred in finding that his testimony about his pain lacked credibility.[3] The ALJ

---

[3] Pain may be so great as to merit a conclusion of disability by itself, or it may be one factor in an overall disability

did not find plaintiff's allegations "generally credible due to inconsistencies in the record as a whole." (Tr. at 19-20) While the ALJ has "discretion to evaluate the credibility of a claimant and to arrive at an independent judgment [regarding . . . pain, he must do so] in light of medical findings and other evidence." Mimms v. Heckler, 750 F.2d 180, 186 (2d Cir. 1984) (internal quotation omitted). He must explain "how the evidence leads to a finding that the plaintiff does not have pain that limits his ability to work." Kyle, 99 F. Supp. 2d at 233.

Acknowledging that plaintiff "presently has several medical conditions which would significantly impact upon his ability to perform work related activities," (Tr. at 19) the ALJ found that plaintiff's pain was not disabling on June 30, 1999. Specifically, he noted that, while plaintiff had a steroid injection for his back pain in 1997 (Tr. at 17), when he was assessed for back pain in 1999, his "physical examination was essentially normal." (Tr. at 19) He was then lifting weights daily.[4] He "had some positive response to his use of Motrin and

---

determination. Rivera v. Schweiker, 717 F.2d 719, 724-25 (2d Cir. 1983). Here, plaintiff does not allege that his pain alone was disabling. Accordingly, the ALJ considered his pain in conjunction with all of his symptoms to determine disability. (Tr. at 18)

[4]Plaintiff argues that it is unfair to hold his weight-lifting against him, as he lifted weights on the recommendation of a physical therapist. However, his ability to lift weights is a factor the ALJ was entitled to consider in assessing whether he was disabled by back pain and injury in 1999.

9

epidural steroid injections during the year 2000." (Tr. at 19)

In 2001, he exacerbated his back pain. (Tr. at 19) There was a "marked increase in low back pain" at that time. (Tr. at 17) His pain worsened as time passed (Tr. at 19) and he began using narcotic pain medications in March 2003. These findings, together with evidence of some of plaintiff's daily activities, constitute substantial evidence that plaintiff was not disabled by pain in 1999, although he might have become so after that time.

IV. Conclusion

Accordingly, plaintiff's motion to reverse the decision of the Commissioner is denied (doc. # 11), and defendant's motion to affirm the decision of the Commissioner is granted (doc. # 13). The Clerk may close the file.

So ordered.

Dated at Hartford, Connecticut this 29th day of September 2007.

```
            _____/s/_____
                  Robert N. Chatigny
              United States District Judge
```